IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIO HENDERSON, | ) | CASE NO. 1:19-cv-02906 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN TIM BUCHANAN | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Antonio Henderson ("Henderson" or "Petitioner") brings this habeas corpus

action pursuant to 28 U.S.C. § 2254.[1]  Doc. 1.  His federal habeas petition (hereinafter referred to

as "Petition") is deemed filed on November 28, 2019, the date he placed it in the prison mailing

system.[2]  Doc. 1, p. 15.  Henderson challenges his 2017 conviction and sentence rendered in

Cuyahoga County Common Pleas Court Case No. CR-17-613454-A, *State of Ohio v. Antonio

Henderson*.  Doc. 1; Doc. 9-1, pp. 12-15.

On February 21, 2017, a Cuyahoga County, Ohio grand jury indicted Henderson on six

counts – two counts of felonious assault, with one- and three-year firearm specifications; one

count of discharge of a firearm on or near prohibited premises, with one- and three-year firearm

specifications; one count of domestic violence; one count of criminal damaging or endangering;

and one count of intimidation of crime victim or witness, with one- and three-year firearm

specifications.  Doc. 9-1, pp. 4-7.  Following a bench trial, the trial court found Henderson guilty

---

[1] In various filings, Petitioner refers to 28 U.S.C. § 2255.  *See e.g.,* Doc. 10, p. 1; Doc. 11, p. 1.  However, Petitioner's habeas corpus action is filed pursuant to 28 U.S.C. § 2254.  Doc. 1.

[2] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S. 266, 273 (1988)).  Henderson's Petition was docketed in this Court on December 17, 2019.  Doc. 1.

of felonious assault with firearm specifications as charged in Count 1; domestic violence as charged in Count 4; and criminal damaging as charged in Count 5.  Doc. 9-1, pp. 12-15.  The trial court dismissed the three other counts.  *Id.*  On November 20, 2017, the trial court merged Count 4 into Count 1 and merged the one- and three-year firearm specifications in Count 1.  Doc. 9-1, pp. 14-15.  The trial court sentenced Henderson to an eight-year prison term (a mandatory three-year sentence on the firearm specification in Count 1 to be served prior to and consecutive to a five-year sentence on Count 1 and six months in County jail as to Count 5 to be served concurrent to Count 1).  *Id.*

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  On March 23, 2020, Respondent filed an Answer/Return of Writ.  Doc. 9.  Henderson filed a reply ("Traverse") on April 15, 2020.  Doc. 10.  For the reasons set forth herein, the undersigned recommends that the Court **DISMISS** Henderson's Petition (Doc. 1).

**I.  Pending Motions**

Also pending before the Court are the following motions filed by Petitioner: (1) Motion for Discovery and Production of Documents (Doc. 11); and (2) Motion for Evidentiary Hearing (Doc. 14).  The Respondent filed responses to both motions.  Docs. 13, 15.  For the reasons explained below, Petitioner's pending motions (Docs. 11, 14) are **DENIED**.

In his Motion for Discovery and Production of Documents, Henderson seeks to discover communications that the government[3] had with his trial counsel.  Doc. 11.  Henderson contends

---

[3] Henderson states that he seeks to discover communications between the United States Attorney's Office and his trial counsel.  Doc. 11, p. 2.  However, the conviction that Henderson challenges was prosecuted by the State of Ohio not the United States.  Thus, liberally construing Henderson's pro se filings, the undersigned interprets his motion as a request for communications between the State of Ohio/county prosecutor's office and his trial counsel. *See Haines v. Kerner,* 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652(1972) (pleadings of pro se prisoners are held "to less stringent standards than formal pleadings drafted by lawyers[]").

that the information he seeks to discover will establish the validity of his constitutional claim that his defense counsel provided ineffective assistance of counsel by failing to investigate his criminal case.  Doc. 11, p. 3.  In his motion for discovery, Henderson also asserts that a court may appoint counsel if necessary for conducting discovery and he refers to the appointment of an investigator.[4]  Doc. 11, p. 1; Doc. 11-1, p. 1-2.  Henderson also requests an evidentiary hearing to resolve disputed facts regarding his ineffective assistance of counsel claim.  Doc. 14, Doc. 14-1.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley,* 520 U.S. 899, 904 (1997).  However, a court, in its discretion, may allow discovery if the petitioner establishes "good cause" demonstrating why such a request should be granted.  *See* Rule 6 of the Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254 ("A judge *may*, *for good cause*, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery.") (emphasis supplied).  "[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is. . . entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry."  *Bracy,* 520 U.S. at 908-09 (citing *Harris v. Nelson,* 394 U.S. 286, 299 (1969)).

Expansion of the record in a habeas proceeding is also discretionary. *See* Rule 7 of the Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254 (". . . the judge *may* direct the parties to

---

[4] With respect to Henderson's reference to appointment of an investigator, it is not clear whether he is seeking appointment of an investigator in this habeas case or whether he is arguing that his trial counsel was ineffective for not seeking the appointment of an investigator in the underlying criminal case to take statements from a witness to support his defense.  The undersigned liberally construes Henderson's pro se motion as a request for appointment of counsel and/or investigator in conjunction with his request for discovery and production of documents.

expand the record . . .) (emphasis supplied).  Furthermore, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Moore v. Mitchell*, 708 F.3d 760, 781 (6th Cir. 2013) (quoting *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1398 (2011)).  A federal habeas petition is not intended to allow for a "retrial" of a state proceeding.  *Moore*, 708 F.3d at 781.

With respect to requests for appointment of counsel, it is well established that a habeas corpus proceeding is civil in nature and the Sixth Amendment right to counsel afforded for criminal proceedings does not apply.  *See, e.g.*, *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (citing *McCleskey v. Zant*, 499 U.S. 467, 495, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)); *Douglas v. Maxwell*, 357 F.2d 320, 321 (6th Cir. 1966); (there is no Sixth Amendment right to appointed counsel in habeas cases since a habeas corpus proceeding is not a criminal proceeding).  The Rules Governing § 2254 Cases ("Habeas Rules") provide situations when a federal habeas court must appoint counsel but do not otherwise set a standard for when the court may appoint counsel.  *See, e.g., See* Rule 6(a) of the Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254 ("If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A."); Rule 8 of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254 (counsel must be appointed if evidentiary hearing is warranted).

When not required by rule, the appointment of counsel for federal habeas petitioners who, like Petitioner, have filed pursuant to § 2254, is governed by the Criminal Justice Act, 18 U.S.C. § 3006A.  *See* 28 U.S.C. § 2254(h).  Pursuant to 18 U.S.C. § 3006A, the decision to appoint counsel for a federal habeas petitioner is within the court's discretion, and representation may be provided when "the interests of justice so require."  18 U.S.C. § 3006A(a)(2); *Mira v.*

4

*Marshall,* 806 F.2d 636, 638 (6th Cir. 1986) ("The decision to appoint counsel for a federal habeas petitioner is within the discretion of the court and is required only where the interests of justice or due process so require.").  "Appointment of counsel is only justified in 'exceptional circumstances,' and is unnecessary where claims are 'relatively straightforward' and arise under settled law."  *U.S. v. Pullen*, 2012 WL 116035, * 1 (N.D. Ohio Jan. 13, 2012) (denying motion for appointment of counsel in habeas proceeding filed pursuant to 28 U.S.C. § 2255) (citing *Gilbert v. Barnhart*, 2009 WL 4018271, *1 (E.D. Mich. Nov. 19, 2009) (§ 2254 proceeding) and *Bookstore v. Addison*, 2002 WL 31538688, at *2 (10th Cir. Nov. 6, 2002) (§ 2254 proceeding)).

As discussed more fully below, Henderson has procedurally defaulted the grounds for relief raised in his Petition.  Thus, the undersigned finds that Henderson's requests for discovery, appointment of counsel, and appointment of an investigator to demonstrate the validity of his ineffective assistance of counsel claim are not appropriate and he has failed to demonstrate a basis upon which his motions should be granted.  Henderson has failed to show that exceptional circumstances exist warranting the appointment of counsel.  Furthermore, even if Henderson had not procedurally defaulted the claims he seeks to pursue in this habeas proceeding, as noted above, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Moore*, 708 F.3d at 781.  Thus, discovery or expansion of the record would not be warranted.  Henderson would be required to demonstrate that, based on the record before the state court, the state court's decision was contrary to or an unreasonable application of clearly established federal law.

For the foregoing reasons, Henderson's motions (Doc. 11, Doc. 14) are **DENIED**.

## II. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

The Eighth District Court of Appeals summarized facts underlying Henderson's conviction and sentence as follows:

> {¶ 4} Brittany Jackson, the victim, testified that Henderson is her brother. On December 24, 2016, Brittany went to visit her sister around 8:00 p.m. Brittany drove her girlfriend's car to her sister's house and took her nephew, K.B., with her. Brittany believed K.B. to be Henderson's four-year-old son. Henderson, however, did not believe that he was K.B.'s father.

> {¶ 5} When Brittany got to her sister's house, Henderson was also there, sleeping on the couch. Brittany said that she and Henderson were not on "speaking terms" at that time. When Henderson woke up, Brittany told K.B. to "go talk to his dad." Henderson got angry at Brittany because she brought K.B. to the house. Henderson and Brittany got into a "heated argument" over K.B. The argument lasted for about ten minutes inside and then continued outside of the house. Brittany's parents, who lived two houses down from Brittany's sister, came from their house and calmed Brittany down.

> {¶ 6} Brittany explained that after she calmed down, Henderson walked to his car, which was parked in front of her sister's house. Brittany said that when he got to his car, he reached down to get what she believed to be a gun. She did not see a gun, but she heard what sounded like him putting bullets into a gun.

> {¶ 7} Brittany walked with her parents to their house. Her mother tried to keep Brittany inside her house, but Brittany was "frustrated at this point," so she was still "yelling" and "screaming." Brittany went back outside and was standing in her parents' front yard when Henderson "raised the gun up" at her "like he was going to shoot." Brittany asked Henderson if he was going to shoot her. Brittany thought Henderson was serious so she ran. By the time she "hit the third step towards [her] mom's house," she heard shots being fired. Her mother and stepfather were on their porch.

{¶ 8} Brittany explained that there was an abandoned house between her parents' house and her sister's house. When Henderson began shooting at her, he was on the sidewalk between her sister's house and the abandoned house. Brittany's girlfriend's car, which Brittany had been driving, was parked in her parents' driveway and was between her and Henderson. Brittany testified that six shots hit her girlfriend's car.

{¶ 9} Brittany testified that when Henderson fired the shots, she ran into her parents' house and called 911. The 911 call was played in court.[FN 1] She testified that she told the 911 operator that her brother shot at her five to six times. She also said that she told the 911 operator that she had a license to carry and conceal a weapon ("CCW") and that she "put her weapon up." She explained that she did not have her gun with her and that it was in a safe at her house in Warrensville Heights. When she said that she "put her weapon up" to the 911 operator, she explained that she meant her pepper spray.

> [FN 1] The 911 call is not in the record on appeal. Neither the state nor Henderson requested that it be admitted into evidence.

{¶ 10} On cross-examination, Brittany stated that she realized that Henderson was shooting at her car and not her because all of the bullets hit her girlfriend's car. She opined that if he had meant to shoot at her, he could have shot at the house when she ran. But she further explained on redirect examination that Henderson "was shooting in [her] direction."

{¶ 11} Police officers who arrived on the scene found ten spent shell casings and one spent .45-caliber round on the tree lawn, sidewalk, and street in front of Brittany's sister's house. Police towed Brittany's girlfriend's vehicle for processing. They found six exterior bullet holes caused by bullets entering the vehicle's right side (the side facing Henderson), one exit hole on the right side, and several bullet holes on the interior of the vehicle where bullets passed "into the trunk." They also found one bullet inside the trunk. There were no bullet holes with rust, which would indicate that the vehicle had older bullet holes.

{¶ 12} Detective Michael Kitchen testified that he interviewed Brittany and her stepfather the day after the incident. Brittany's mother would not talk to him. Detective Kitchen stated that they both gave the exact same version of what occurred, which was essentially the same version that Brittany testified to in court. After talking to both Brittany and her stepfather, Detective Kitchen went to the county prosecutor and obtained an arrest warrant for Henderson.

{¶13} Detective Kitchen testified that when he talked to Henderson, Henderson told him that he had worked until about 4:00 p.m. on the day of the shooting and then went to a friend's house on Harvard Avenue. Henderson said that he remained at his friend's house for the rest of the evening.

*State v. Henderson*, 2018 WL 4521129, * 1-2 (Ohio App. Ct. Sept. 20, 2018), 2018-Ohio-3797, ¶¶ 4-13, Doc. 9-1, pp. 65-69.

### III. Procedural Background

#### A.  State court conviction

On February 21, 2017, a Cuyahoga County, Ohio grand jury indicted Henderson on six counts – two counts of felonious assault, with one- and three-year firearm specifications (Counts 1 and 2); one count of discharge of a firearm on or near prohibited premises, with one- and three-year firearm specifications (Count 3); one count of domestic violence (Count 4); one count of criminal damaging or endangering (Count 5); and one count of intimidation of crime victim or witness, with one- and three-year firearm specifications (Count 6).  Doc. 9-1, pp. 4-7.

Henderson signed a jury trial waiver and the case proceeded to trial as a bench trial on September 18, 2017.  Doc. 9-1, p. 10.  Following trial, the trial court dismissed Counts 2, 3, and 6 and informed counsel and Henderson that the verdict would be announced the following day, September 19, 2017.  *Id.*  On September 19, 2017, Henderson failed to appear in court for announcement of the verdict.  Doc. 9-1, p. 11.  The court issued a capias for Henderson.  *Id.*

On September 20, 2017, Henderson's case was called.  Doc. 9-1, pp. 12-13, Doc. 9-2, pp. 227-228.  Henderson again was not present.  *Id.*  The court relayed that it had received information that Henderson had removed his GPS monitoring device on September 19, 2017.  Doc. 9-2, pp. 227-228.  The court then proceeded to announce its verdict, finding Henderson guilty of felonious assault with firearm specifications as charged in Count 1; domestic violence as charged in Count 4; and criminal damaging as charged in Count 5.  Doc. 9-1, pp. 12-13, Doc. 9-2, p. 228.  The trial court further stated that Counts 2, 3, and 6 had been dismissed upon

defense counsel's Rule 29 motion.  *Id.*  The court indicated that sentencing would occur upon Henderson's remand to the County jail.  *Id.*

On November 20, 2017, Henderson appeared before the court for sentencing.  Doc. 9-1, pp. 14-15, Doc. 9-2, pp. 239-257.  The trial court merged Count 4 into Count 1 and merged the one- and three-year firearm specifications in Count 1.  Doc. 9-1, pp. 14-15.  The trial court sentenced Henderson to an eight-year prison term (a mandatory three-year sentence on the firearm specification in Count 1 to be served prior to and consecutive to a five-year sentence on Count 1 and six months in County jail as to Count 5 to be served concurrent to Count 1).  *Id.*  The trial court appointed new counsel to represent Henderson in his appeal.  Doc. 9-1, p. 14.

## B.  Direct appeal

On December 18, 2017, Henderson, through his court appointed appellate counsel, filed a notice of appeal with the Eighth District Court of Appeals.  Doc. 9-1, pp. 16-27.  In his appellate brief filed on March 30, 2018, (Doc. 9-1, pp. 28-47), Henderson raised the following assignments of error:

1. The trial court prejudicially excluded testimony designed to develop the defense theory that another person was the shooter when it excluded testimony about the relationship between Brittany Jackson and her girlfriend as a possible motive of a different shooter.

   Issue 1: Did the Court unconstitutionally deny due process and fair trial rights when it blocked testimony suggesting an alternate shooter?

2. Defendant wrongfully convicted of Felonious Assault in Count One.

   Issue 1: Was the conviction of felonious assault against the manifest weight of the evidence?

3. Defendant's Counsel was ineffective and thereby denied Henderson a fair trial.

   Issue 1: Was Counsel's failure to call witnesses deficient performance such that Henderson's right to a fair trial was prejudiced?

9

> Issue 2: Was Counsel's failure to argue that Jackson testified against Henderson because of an ill motive arising out of the paternity deficient performance such that Henderson's right to a fair trial was prejudiced?

Doc. 9-1, pp. 31, 36-44.  On May 21, 2018, the State filed its appellate brief.  Doc. 9-1, pp. 48-62.  On September 20, 2018, the Eighth District Court of Appeals affirmed the judgment of the trial court.  Doc. 9-1, pp. 63-82.  Henderson did not file a timely appeal with the Supreme Court of Ohio.

### C. Ohio Supreme Court Delayed Appeal

On July 29, 2019, Henderson, acting pro se, filed an untimely notice of appeal with the Supreme Court of Ohio (Doc. 9-1, pp. 83-85) and motion for leave to file a delayed appeal (Doc. 9-1, pp. 86-109.  In his motion for delayed appeal, Henderson stated that his appellate counsel had not informed him that the court of appeals had affirmed the trial court's decision and he learned of the court of appeals' ruling from his case manager.  Doc. 9-1, p. 86.  In his filing, Henderson did not indicate when he learned of the court of appeals' September 20, 2018, decision.  On September 17, 2019, the Supreme Court of Ohio denied Henderson's motion for delayed appeal and dismissed the case.  Doc. 9-1, p. 110.

### D. Application for reopening pursuant to Ohio App. R. 26(B)

On February 20, 2019, Henderson, acting pro se, filed an untimely application to reopen his appeal pursuant to Ohio App. R. 26(B).  Doc. 9-1, pp. 111-122.  In his application to reopen, Henderson argued that his appellate counsel was ineffective for failing to raise the following assignments of error:

1. Trial counsel was ineffective for failing to move the court for a waiver of, and for not, objecting to the imposition of court costs against the indigent appellant.

2. The trial court committed reversible and plain error and was without jurisdiction to conduct a bench trial because the requirements of R.C. 2945.05 were not strictly followed.

Doc. 9-1, pp. 113-116.  On March 7, 2019, the State filed a memorandum of law opposing Henderson's application to reopen.  Doc. 9-1, pp. 123-127.  On March 26, 2019, the Eighth District Court of Appeals denied Henderson's application to reopen, finding that it was not timely filed and Henderson failed to establish good cause for the untimely filing.  Doc. 9-1, pp. 131-134.  Three days after the court ruled on Henderson's App. R. 26(B) application, Henderson filed a response to the memorandum in opposition, stating he had attempted to file his Ohio App. R. 26(B) as early as November 30, 2018.  Doc. 9-1, pp. 128-130.  Henderson did not file an appeal from the March 26, 2019, decision with the Supreme Court of Ohio.

In connection with the application to reopen, the court of appeals denied Henderson's motion to waive costs.  Doc. 9-1, pp. 135-138, 139.

### E.  Post-conviction trial court filings

On May 12, 2018, Henderson filed a pro se motion to vacate court costs and fines and an affidavit of indigency.  Doc. 9-1, pp. 140-145.  On February 19, 2019, Henderson filed a motion to proceed with judgment on his motion to vacate court costs and fines.  Doc. 9-1, pp. 145-146.  On October 17, 2019, the trial court grant in part and denied in part Henderson's motion to vacate court costs and fines, finding that Henderson could perform community work service in state prison and those hours could be applied toward the satisfaction of costs, fees or fines.  Doc. 9-1, p. 147.

On June 24, 2019, Henderson filed a motion for new trial due to newly discovered evidence.  Doc. 9-1, pp. 148-159.  Henderson argued that his attorney "failed to [provide] an adequate defense, because he made no effort to investigate the witness who could have changed the outcome of the trial."  Doc. 9-1, p. 148.

On June 26, 2019, Henderson filed a petition to vacate or set aside judgment of conviction or sentence.  Doc. 9-1, pp. 160-164.  In his petition, Henderson raised the following claims:

1.  I was denied my constitutional right to effective assistance of counsel.

    Facts:  Counsel's failure to investigate a key witness who could have supported the defense and changed the outcome of the case constituted ineffective assistance of counsel affirmed the habeas court's grant of relief.

2.  Due process violation.

    Facts: I was deprived a fair trial by counsel's failure to call a key witness I instructed him to contact "absolutely prejudiced" my right to a fair trial.

Doc. 9-1, pp. 161-163.

On October 22, 2019, Henderson filed a motion for appointment of counsel to represent him in connection with his petition for postconviction relief.  Doc. 9-1, pp. 165-166.  On December 10, 2019, the trial court denied Henderson's motion for appointment of counsel.  Doc. 9-1, p. 167.

A review of the trial court docket shows there have been no rulings on the motion for new trial and petition to vacate or set aside judgment of conviction or sentence. https://cpdocket.cp.cuyahogacounty.us/CR_CaseInformation_Docket.aspx?q=87GX69f278bgdIh JnMoKhQ2 (search Criminal Case No. 17-613454) (last visited 11/30/2020).

**F.  Federal habeas corpus**

Henderson raises the following two grounds for relief in his Petition:

**GROUND ONE:** Ineffective assistance of counsel.

**Supporting Facts:** Counsel deficient performance for failing to investigate my witness that was available to testify and would have done so, if contacted, with testimony that would have been favorable to my defense. SEE: CASE # CR-17-613454-A 6-24-19 & 6-26-19[;] also brief prepared by Richard Hackered.

12

> **GROUND TWO:** Defendant was wrongfully convicted of felonious assault.
>
> **Supporting Facts:** The alleged victim testified three times that Henderson intended to fire on the car – not her T@132, 144, and 146[.] [T]he evidence points to someone destroying property not firing at the alleged victim which supports a lesser charge[.]  [T]he witness that was the[re] presented a affidavit to verify that the alleged victim was nowhere near the line of fire and is willing to testify to the facts.

Doc. 1, pp. 5-7.

## IV. Law & Analysis

### A.  Standard of review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application'

of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

### B. Exhaustion and procedural default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6

14

(1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts"). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.[5] *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987). Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies where state remedies are "still available at the time of the federal petition." *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107,

---

[5] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law. *McMeans,* 228 F.3d at 681.

125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court."[6] *Id.*  Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'"  *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also  Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver).   "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted."  *Williams*, 460 F.3d at 806.  While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

---

[6] In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him."  *Id.* at 753.  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Id.*  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

**C.**      **Grounds One and Two should be DISMISSED as procedurally defaulted**

In Ground One, Henderson argues that his trial counsel was deficient for failing to investigate a witness who would have testified favorably in his defense.  Doc. 1, p. 5.  In Ground Two, Henderson argues that he was wrongfully convicted of felonious assault.  Doc. 1, p. 7. Respondent argues, inter alia, that Henderson's Petition should be dismissed because he procedurally defaulted his claims.

In his direct appeal to the Eighth District Court of Appeals, Henderson, through his appellate counsel argued, inter alia, that Henderson's conviction for felonious assault was against the manifest weight of the evidence and he argued that counsel was constitutionally ineffective for failing to call witnesses. Doc. 9-1, pp. 31, 38-44.  Henderson did not raise a sufficiency of evidence claim in his direct appeal.  Rather he argued that his conviction was against the manifest weight of the evidence.  Even assuming that Henderson did fairly present his insufficiency claim to the court of appeals, after the Eighth District Court of Appeals affirmed

17

his conviction September 20, 2018, Henderson did not file a timely appeal with the Supreme
Court of Ohio regarding either assignment of error and his motion for delayed appeal was later
denied by the Supreme Court of Ohio.  Doc. 9-1, p. 110.  "Applicable Ohio court rules indicate
that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits."
*Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004).  And such a denial is "an adequate
procedural ground to foreclose federal habeas review."  *Smith v. Sheldon*, 2018 WL 5795525, * 5
(N.D. Ohio July 26, 2018), *report and recommended adopted by*, 2018 WL 4346577 (N.D. Ohio
Sept. 12, 2018); *see also Williams*, 460 F.3d at 806 ("[A] petitioner may procedurally default a
claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary
appellate review procedures.'")  (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see
also  Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each
and every level [of the state courts] cannot be considered in a federal habeas corpus petition.");
*see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court
of appeals constituted a waiver).

    Although Henderson raised ineffective assistance of counsel in his post-conviction
motion for new trial and/or petition to vacate or set aside judgment of conviction or sentence, the
trial court has not ruled on those motions.  Thus, those claims are unexhausted and not properly
before this Court.

    Furthermore, considering Henderson's failure to file a timely appeal to the Supreme
Court of Ohio in his direct appeal, his grounds for relief are subject to dismissal based on
procedural default unless he can overcome the default.  In order to overcome the procedural
default, Henderson must establish cause and prejudice to excuse his procedural default or
demonstrate that a fundamental miscarriage of justice will occur if his ground for relief is not

considered on federal habeas review.  Henderson argues the merits of this grounds for relief.  He does not address the issue of procedural default.

Even if the Court were to consider the reason asserted in Henderson's motion for delayed appeal for not filing a timely appeal with the Supreme Court of Ohio, i.e., that his appellate counsel did not inform him of the court of appeals' September 20, 2018, decision and he learned about the court of appeals' decision through his case manager (Doc. 9-1, p. 86), the Court should not excuse the procedural default.

In his July 29, 2019, motion for delayed appeal filed in the Supreme Court of Ohio, Henderson does not state when he learned of the September 20, 2018, decision.  However, in his February 20, 2019, application for reopening filed pursuant to Ohio App. R. 26(B), (Doc. 9-1, pp. 111, 133), Henderson acknowledged that the court of appeals' decision was journalized on September 20, 2018 (Doc. 9-1, p. 112).  Also, in his response filed in support of his application for reopening, Henderson states that he attempted to file his App. R. 26(B) application as early as November 30, 2018.  Doc. 9-1, p. 128-130.  Thus, Henderson's own filings demonstrate that he was aware of the September 20, 2018, court of appeals' decision in his direct appeal at least as early as February 20, 2019, when he filed his App. R. 26(B) application, and possibly as early as November 30, 2018, when he claims to have attempted to file his App. R. 26(B) application.  However, he did not file his motion for delayed appeal with the Supreme Court of Ohio until July 29, 2019, (Doc. 9-1, p. 86), approximately five months after the filing of his App. R. 26(B) application and almost eight months after he claims to have attempted to file his App. R. 26(B) application.  Thus, even assuming arguendo that his appellate counsel did not notify him of the appellate court's decision, he cannot show he was prejudiced by the alleged failure to notify him. *See e.g.*, *Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 436 (6th

Cir. 2006) (finding no prejudice as a result of petitioner's failure to notify him of court of appeals' decision denying petitioner's claims because petitioner did not take action to appeal the court of appeals' decision for approximately five months after learning of the decision).

Additionally, to the extent that Henderson would attempt to argue that cause for his procedural default was ineffective assistance of appellate counsel in not timely filing an appeal with the Supreme Court of Ohio, that argument should fail because he represented himself in his appeal to the Supreme Court of Ohio.  "There can be a constitutional claim of ineffective assistance of counsel only at a stage of the proceedings when there is a right to counsel under the Sixth Amendment."  *Smith*, 463 F.3d at 433 (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)).  And it is clear that "a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction . . . ."  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (citing *Wainwright v. Torna*, 455 U.S. 586 (1982) and *Ross v. Moffitt*, 417 U.S. 600 (1974)); *see also Garrett*, 2007 WL 315093, * 5; *see also Espinal v. Warden, Noble Corr. Inst.*, 2007 WL 1288175, * 10 (S.D. Ohio May 1, 2007).   Furthermore, a federal habeas petitioner's *pro se* status, ignorance of the law and procedural filing requirements are not enough to establish cause to overcome procedural default.  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

Additionally, while "[a]ttorney error that constitutes ineffective assistance of counsel is cause" to overcome procedural default, *Coleman v. Thompson*, 501 U.S. 722, 754 (1991), claims of ineffective assistance of counsel cannot provide cause for the procedural default of another claim if the ineffective assistance claim itself is procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  Although, "that procedural default may [] *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim."  *Id*. (emphasis

20

original).  Henderson filed an App. R. 26(B) application, arguing ineffective assistance of counsel for various reasons.  Doc. 9-1, pp. 111-122.  However, he procedurally defaulted his claims of ineffective assistance of counsel, because, as found by the state court of appeals, Henderson failed to timely file his application to reopen and he failed to demonstrate good cause for the untimely filing.  Doc. 9-1, pp. 131-134.  Moreover, Henderson did not appeal the Eighth District Court of Appeals' denial of his application to reopen to the Supreme Court of Ohio and has not provided cause for procedurally defaulting his alleged claims of ineffective assistance of appellate counsel.

Considering the foregoing, the undersigned finds that Henderson has failed to demonstrate "cause" or "prejudice" sufficient to overcome the procedural default of the claims he seeks to raise in this federal habeas proceeding.

A procedural default may also be excused by demonstrating a claim of actual innocence. A claim of actual innocence requires a showing of "new reliable evidence" and requires a showing of factual innocence, not mere legal insufficiency.  *See Schulp v. Delo*, 513 U.S. 298, 324 (1995).  Henderson argues that the evidence was insufficient to convict him of felonious assault and he appears to rely on the affidavit of Ebony Henderson to support his insufficiency claim.  He attaches to his Traverse an affidavit of facts signed by himself in May 2019 and an affidavit from Ebony Henderson, sister to Henderson and Brittany Jackson, the victim, also signed in May 2019.  Doc. 10-1.  In Ebony Henderson's affidavit, she states she was present at the time of the incident that led to the charges being filed against Henderson (Doc. 10-1, p. 5) and she "know[s] for a fact that [her] brother was not aiming to kill or harm [her] sister he was angry and took it out on the car." (Doc. 10-1, p. 4).  Even if the affidavit is properly before this Court and relied on by Henderson to establish that he is innocent of felonious assault, the

affidavit does not demonstrate that he is factually innocent.  The affidavit is the alleged witness'

opinion as to Henderson's subjective intent.  The affiant does not aver that Henderson was not

shooting his gun.  Considering the foregoing, the undersigned finds that the affidavit of Ebony

Henderson does not demonstrate that Henderson is actually innocent of felonious assault.  *See*

*Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (quoting *Bousley v. United States*, 523 U.S.

614, 623 (1998) for the proposition that "actual innocence means factual innocence, not mere

legal insufficiency") (internal quotations omitted).  Thus, the undersigned concludes that

Henderson's procedural default should not be excused on the basis of actual innocence.

Based on the foregoing, the undersigned concludes that Henderson procedurally

defaulted both grounds for relief and his procedural default should not be excused.

## V. Conclusion and Recommendation

For the reasons stated above, Petitioner's pending motions (Docs. 11, 14) are **DENIED**.

Also, for the reasons explained herein, the undersigned recommends that the Court **DISMISS**

Henderson's Petition (Doc. 1) because the claims have been procedurally defaulted and/or

unexhausted.[7]

Dated: December 1, 2020

 */s/ Kathleen B. Burke*

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days after the party objecting has been served with a copy of this Report and

---

[7] Respondent has also argued that Henderson's Petition should be denied or dismissed for additional reasons.  Since
Henderson has procedurally defaulted both grounds for relief, it is not necessary to address those additional
arguments.

Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).